# UNITED STATES DISTRICT COURT
### for the
Middle District of North Carolina

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 1:25MJ **| | |** |
| ONE BLACK APPLE IPHONE WITH A BLACK CASE | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated here.

located in the _____Middle_____ District of _____North Carolina_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated here.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(a)(1)(A) | unlawfully engaging in the business of firearms |

The application is based on these facts:

See affidavit of Special Agent Ben Crocker, incorporated here.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

by CPA

/S/ Benjamin L Crocker
_____
*Applicant's signature*

Benjamin L. Crocker, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone and email _____ *(specify reliable electronic means)*

Date: ___03/31/25___

_____
*Judge's signature*

City and state: Greensboro, NC

L. Patrick Auld, U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is as follows:

a. **TARGET DEVICE** is a black Apple iPhone with a black case.



The **TARGET DEVICE** is currently located at the ATF Greensboro Field Office in Greensboro, NC

This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Items to be seized*

1.     The following records on the **TARGET DEVICE** described in Attachment A that relate to violations of 18 U.S.C. § 922(a)(1)(A) (engaging in the business of dealing in firearms without a license):

    a. Electronic communications between PAGALIS and co-conspirators both known and unknown;

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of firearms trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information);

    e. all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE BLACK APPLE IPHONE WITH A BLACK CASE POSSESSED BY CHRISTOPHER PAGALIS | Case No. _1:25MJ111_ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Benjamin L. Crocker, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Currently, I am investigating firearm distribution activities of Christopher PAGALIS in the Middle District of North Carolina. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device, to wit: a cellular phone further described in Attachment A, currently in law enforcement custody, and the extraction from the device of electronically stored information further described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since August 2019.  I am a graduate of the Federal Law Enforcement Training Center

("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses. I have participated in investigations involving all these areas. Prior to my career with ATF, I worked for the South Carolina Highway Patrol in South Carolina for approximately 6 years. During my tenure with the South Carolina Highway Patrol, I served as a Patrolman, Advanced Special Response Team member and on the Criminal Interdiction Team. During my career in law enforcement, I have been involved in numerous complex case investigations involving federal or state firearm and controlled substance violations. Prior to my career in law enforcement, I attended The Citadel and graduated in 2013 with a Bachelor of Arts Degree in Criminal Justice.

3.      I am familiar with the ways in which firearms traffickers conduct their business, including, but not limited to, their methods of acquiring and distributing firearms, their use of telephones, and their use of code and slang words to conduct their transactions. I am familiar with practices used by traffickers involving the collection of proceeds of firearms trafficking and methods of money laundering used to conceal the nature of the proceeds. I am also familiar with the common practice among firearms traffickers to carry multiple phones and dispose of phones frequently to evade law enforcement detection of their illegal activities. I have conducted and assisted with

numerous investigations regarding the unlawful possession, use, and distribution of firearms during my law enforcement career. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearm and drug related crimes, including, but not limited to, electronic and visual surveillance, witness interviews, the use of search warrants, the use of confidential informants, the use of pen registers/trap and trace devices, mobile tracking devices, and the use of undercover agents.

4.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched shall be referred to as the **TARGET DEVICE.** The **TARGET DEVICE** is a black Apple iPhone with a black case. A photograph of the **TARGET DEVICE** has been attached to this application as Attachment A for further identification.

6.     The **TARGET DEVICE** is currently located at the ATF Greensboro Field Office in Greensboro, NC.

7.     The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** for the purpose of identifying electronically stored data more particularly described in Attachment B.

## PROBABLE CAUSE

8.     On January 14, 2025, ATF Industry Operations Investigator ("IOI") Kim Shultz initiated an unannounced FFL compliance inspection at Southern Firearms, located at 5221 West Market Street, Greensboro, NC. Southern Firearms is the retail sales storefront in Greensboro, NC, for Dana Safety Supply, Inc. (Dana Safety Supply).

9.     During the inspection, IOI Shultz began a physical inventory to account for 2,061 firearms reportedly located in the store. The store manager, Sean WATKINS, assisted IOI Shultz with the inventory. Upon conclusion of the initial inventory, it was determined that approximately 273 firearms were missing. These firearms were purchased and acquired by Southern Firearms between 2021 and 2025. IOI Shultz provided WATKINS with the list of the missing firearms for reconciliation. WATKINS reminded IOI Shultz he was resigning from employment the following day. On January 24, 2025, WATKINS submitted his resignation to Dana Safety Supply effective immediately.

10.     On March 6, 2025, Dana Safety Supply executives updated investigators on their reconciliation results thus far. Dana Safety Supply

provided investigators with an updated inventory list indicating approximately 190 firearms were missing and presumed to have been stolen, with an expected loss of approximately $247,647.

11.     On March 14, 2025, TFO Bryson and GPD Detective Harrill conducted a custodial interview of WATKINS at the Rockingham County Jail. WATKINS was arrested on state charges related to the theft of firearms from Southern Firearms. WATKINS waived his *Miranda* Rights and spoke with TFO Bryson and Det Harrill. TFO Bryson questioned WATKINS regarding firearms sales and transactions. WATKINS admitted that he ordered firearms through Southern Firearms and later stole and sold these firearms for personal gain. WATKINS stated he had formed a relationship with an individual identified as Chris PAGALIS during his employment at Southern Firearms, and WATKINS stated that he only dealt with PAGALIS when it came to selling stolen firearms. PAGALIS had first approached WATKINS asking for a "deal" on firearms. WATKINS stated that PAGALIS paid him cash for the numerous firearms he sold, monies which WATKINS admitted he in turn pocketed at the expense of Southern Firearms. WATKINS described one recent solicitation by PAGALIS, just three days before he left the employ of Southern Firearms on January 24, 2025. WATKINS stated that PAGALIS wanted to purchase all the Glock firearms that Southern Firearms

had in its inventory. WATKINS advised PAGALIS he was about to leave and did not have the time to conduct such transaction.

12.     TFO Bryson used a missing inventory firearm described as an FN M249, belt-fed rifle, as an example when asking WATKINS to describe transactions with PAGALIS. WATKINS stated that he created purchase orders through Southern Firearms to purchase firearm(s) from a vendor. The firearm would be shipped from the supplier and received by the vendor. The packing slip would be checked off and corporate would be sent confirmation the firearm had been received. WATKINS stated he would then either call PAGALIS, or PAGALIS would call him, to confirm the firearm had been received. PAGALIS would then pay WATKINS cash for the firearm and WATKINS would keep the proceeds from the sale. WATKINS stated he would sometimes reimburse the store and sometimes he would keep the cash.

13.     On March 19, 2025, a federal search warrant was obtained for 3232 Islay Court, Greensboro, NC, as this was an address associated with PAGALIS. On March 20, 2025, the federal search warrant was executed at 3232 Islay Court, Greensboro, NC. During the execution of the search warrant, Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted surveillance on the residence. During the surveillance, SA Johnson observed a male, a female, and a juvenile inside the residence. Shortly after observing them inside the residence, the female and juvenile

left the residence in a Toyota Corolla. A Guilford County Sheriff's Deputy conducted a traffic stop of the Toyota Corolla. SA Crocker, TFO Bryson, TFO Stewart, and GPD Detective Harrill then traveled to the location of the stop. SA Crocker identified the adult female as Jessica Halipilias and advised her about the search warrant for the residence. SA Crocker asked Ms. Halipilias if PAGALIS was still inside the residence, and she stated he was. SA Crocker asked Ms. Halipilias if she would call him and advise she was having car troubles, so that PAGALIS would leave the residence. Ms. Halipilias agreed to call PAGALIS, and he answered the phone. SA Johnson advised that the male was leaving the residence in a GMC Terrain shortly after the phone call. A Guilford County Sheriff's Deputy then conducted a traffic stop of the GMC Terrain and identified PAGALIS as the driver. SA Crocker and TFO Bryson then traveled to location where PAGALIS had been stopped. A firearm and the **TARGET DEVICE** were recovered from PAGALIS at the scene.

14.     PAGALIS was detained and transported to the residence where a subsequent interview was conducted by TFO Bryson and Detective Harrill. PAGALIS was read his *Miranda* Rights and agreed to speak with TFO Bryson and Detective Harrill. TFO Bryson asked PAGALIS how many firearms he had obtained then then re-sold in the past. PAGALIS stated between 20 and 25 firearms, stating that he had sold them all around the area. PAGALIS mentioned text messages between WATKINS about the M2

rifle and advised that if we look at the text messages, WATKINS was trying to sell two firearms to help his friend.

15.     PAGALIS stated the sale of the 20 and 25 firearms go back to when he got his concealed carry license back in 2021. PAGALIS stated there would be times when he needed cash, and that he had to sell his guns to obtain such funds. PAGALIS could not recall any specific model firearms that he sold but mentioned Glocks, Colt, and further stated that his interest in guns had been a hobby for many years.

16.     TFO Bryson asked PAGALIS if he had ever purchased any guns in bulk from WATKINS. PAGALIS stated that he had purchased 3 or 4 guns at a time in a package deal on at least two occasions.

17.     PAGALIS stated he had a conversation with WATKINS to purchase all the Glocks in Southern Firearms due to WATKINS statement they were going out of business. PAGALIS stated he took pictures of all the Glock cases.

18.     TFO Bryson exited the vehicle to speak to other agents regarding his investigative work during the search of the premises. Agents located a large, laminated placard from the packaging material for an M249 rifle. TFO Bryson showed the placard to PAGALIS explanation, as PAGALIS had previously stated multiple times he had never purchased an M249. PAGALIS identified the placard as that from a M249. Detective Harrill asked, where

that firearm was at present, to which PAGALIS responded, "I couldn't tell you." Detective Harrill asked PAGALIS if he sold the M249. PAGALIS stated, "I did get rid of that gun, yes I did." PAGALIS could not advise when he sold it. PAGALIS confirmed Armslist.com is the main source where he would sell firearms. PAGALIS advised his account was under his email that PAGALIS identified as "pagc244@gmail.com." PAGALIS advised he only met people in person and did not ship any firearms. PAGALIS stated that the farthest he had traveled to sell a firearm was an hour to an hour and half away.

19.    During the search of 3232 Islay Court, Greensboro, NC, agents recovered the following: 66 firearms (12 confirmed as having been reported stolen from Southern Firearms); two silencers; seven P380 ("Ghost Gun") kits; and 54,785 rounds of ammunition.

## TECHNICAL TERMS

20.    Based on my training and experience, I use the following technical term to convey the following meanings:

a.    Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone

number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is

probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information

necessary to understand other evidence also falls within the scope of the warrant.

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.     *Nature of examination.*     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE** to human inspection to determine whether it is evidence described by the warrant.

24.     *Manner of execution.*     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based on the preceding information, there is probable cause to believe that the named items and information more fully described in Attachment B,

constituting evidence or fruits of violations of 18 U.S.C. § 922(a)(1)(A) will be found in the **TARGET DEVICE** more fully described in Attachment A.

/S/ BENJAMIN L. CROCKER
Benjamin L. Crocker, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Dated: March 31, 2025

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina